BENJAMIN LEWENTHAL and FREDERICK LEWENTHAL, Respondents, *v.* ISAAC LEWENTHAL and Others, Appellants.

First Department, October 24, 1919.

Corporation — action to charge directors with waste — sale of defective goods for account of vendor — rescission of sale ratified by vendor.

Where in an action brought by stockholders and directors of a corporation to charge the defendants, their codirectors, with a waste of the corporate assets and to obtain an accounting it appears that the corporation having

received goods from abroad, notified the vendor that they were not merchantable owing to defects and that the corporation would store them subject to order, and the vendor having accepted payment for the portion of the goods which were merchantable directed the corporation to take the defective goods out of storage and return them, there was a ratification by the vendor of the rescission of the contract of sale and, it being impossible to return the goods to Bohemia owing to the existing war, the defendants are not liable for waste by selling them for the account of the vendor for, owing to the rescission, the goods were not assets of the corporation.

APPEAL by the defendants, Isaac Lewenthal and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 16th day of January, 1919, upon the decision of the court after a trial at the New York Special Term directing the appellants to account for certain merchandise as assets of the Royal Jewelry Manufacturing Company.

*Paul Armitage* of counsel ˙[*S. A. Lowenstein,* attorney], for the appellants.

*Max D. Steuer* of counsel [*Jerome A. Strauss* and *Harry Sammet* with him on the brief; *Harry Sammet,* attorney], for the respondents.

PAGE, J.:

The action is brought by the plaintiffs, as stockholders and directors, to recover from their two brothers as directors, charging a waste of corporate assets of the Royal Jewelry Manufacturing Company. While the complaint specified several charges of waste, there was only one item that was urged on the trial, and that was, that the defendants had wrongfully taken 481 dozen of imitation pearl beads out of the storage warehouse, removed them to their individual place of business, sold some and had others on hand and refused to turn over or account for the same to the plaintiffs or the corporation.

Defendants assert that these goods are not assets of the corporation, but are rejected merchandise held by the company as a bailee for the vendor, Alexander & Co., and that, acting on instructions from that concern, they took and disposed of these goods and that the proceeds belong to Alexander & Co.

The following facts were found by the court: The four Lewenthal brothers were officers, directors and equal stockholders in this corporation. The company had been in business for some years. Prior to November 27, 1914, the jewelry company had for many years purchased imitation pearl beads from Alexander & Co., whose place of business was at Gablonz, Bohemia. During the year 1914, the jewelry company placed orders with Alexander & Co. and received various shipments of beads. The corporation and its officers discovered that " a quantity of them were imperfect and defective, contained milk spots, and were unmerchantable." On the 27th day of November, 1914, the corporation wrote to Alexander & Co. the following letter:

" Upon examining the stock of A37, 38 and 39 pearl beads received on your invoice dated July 25th, which arrived here on September 16th, we find a number of them imperfect. They show the same milk white spots as those we received from you last season. We are now examining each string carefully, and will let you know at next writing the exact number and quantities that are imperfect. We will hold same *subject to your order, as they cannot be sold in the condition they are in. Kindly advise us by return mail what disposition to make of the same.*"

And on December 7, 1914, wrote the following letter:

" We give you below an itemized list of the pearls received in bad condition:

| | |
|---|---|
| A–37 | 50 dozen |
| 38 | 134 3/4 dozen |
| 39 | 152 2/3    " |
| 65 | 8 1/6    " |
| 2037 | 42 1/6    " |
| 2192 | 23 1/2    " |
| 2193 | 54 1/2    " |
| 2194 | 16 1/6    " |

" As written you before, *it is impossible for us to make use of these beads in the condition they are in, and we would ask you to kindly advise us by return mail what disposition you wish us to make of the same, as we are holding them subject to your order.*"

In answer to the letter of November twenty-seventh Alexander & Co. wrote the following letter to the defendant:

"Royal Jewelry Manufacturing Company:

"We are in receipt of your favor 27p and are sorry to hear that from the beads 37, 38, 39, sent 25th July. *Please select such which are not good and send them by parcel post via Italy back and we will credit you for it.*"

Thereafter, in February, 1915, the defendant corporation debited the account of Alexander & Co. on its books with the sum of $1,529.20, being equivalent to 7,551.63 kronen, representing the purchase price of these goods plus duty and freight, which purchase price plus duty and freight had already been credited to Alexander & Co. on its books, and thereafter, and on or about the 9th day of March, 1915, the defendant corporation made up a statement of its account with Alexander & Co., deducting 7,551.63 kronen, which left a balance due Alexander & Co. of 11,108.65 kronen. The defendant corporation purchased foreign exchange drawn on the Wiener Bank Verein for the amount of 11,108.65 kronen, the balance shown to be due by the said statement and inclosed the same with the statement aforesaid in the following letter:

"We enclose draft for Kr. 11,108.65, covering bills as per enclosed statement, less deductions made *for goods, which we are holding subject to your order. The attached duplicate credit memorandums will explain these deductions.*"

Thereafter Alexander & Co. received the draft, statement and debit note and accepted the same. After the receipt of the letter of March 9, 1915, Alexander & Co. wrote to the defendant corporation the following letter under date of January 25, 1916:

"The pearls 37 /38 /39 etc., *which you hold to our disposition amount Kr. 7,551.63 & 169.55 as per your debit Notes,* please take out of the store house and take it in the place of your new firm 302 Fifth Avenue.

"As soon as there will be a possibility to ship them to us, you will please do so."

This letter was not received by the individual defendants until the latter part of August, 1916. During the year 1915, they had endeavored to return the goods to Alexander & Co.,

but owing to war conditions were unable to do so and the goods remained packed in the place of business of defendant corporation, subject to the order of Alexander & Co. up to November 23, 1915, at which date the agreement liquidating the corporation was entered into by all the parties hereto. In this agreement it was provided that all merchandise, fixtures and furnishings should be sold at public auction to the highest bidder "except the merchandise of Alexander & Co., of Gablonz, Bohemia," and certain other merchandise, and then provided: "As to the merchandise concerning which there is a controversy, to wit, that of Alexander * * *, it is agreed that the same be stored in a storage house in the name of the corporation until the controversy is adjusted or determined."

The agreement also provided that all mail addressed to the Royal Jewelry Manufacturing Company excepting such as may contain remittances shall after the receipt of same, be transmitted to the purchaser of said name or his assignee, who shall be entitled to the sole possession of said mail. After the signing of this agreement the goods of Alexander & Co. were stored in the Chelsea Storage Warehouse in the name of the defendant corporation. The letter of January 25, 1916, of Alexander & Co. addressed to the Royal Jewelry Manufacturing Company was received in August, 1916, by the individual defendants who had purchased the name, merchandise, etc., of the defendant corporation and continued to use its name as a trade name.

From the foregoing findings it seems very clear that this merchandise was not the property of the defendant corporation but was the property of Alexander & Co.

The learned trial justice in his opinion discussed the right of the corporation to rescind, stating that the statute (Pers. Prop. Law, § 150, as added by Laws of 1911, chap. 571) does not authorize the rejection of a part of an entire shipment, and says that it did not give the buyer the right to select and retain such of the beads in each shipment as suited it and reject the rest. If the goods had been returned to the seller pursuant to their rejection title would doubtless have revested in the seller. He overlooks, however, the fact that the right to rescind not alone is not questioned by

Alexander & Co., but it was expressly ratified, and that the disposition of the goods by the defendants in taking them out of the storage warehouse and into their possession was by the express direction of Alexander & Co. The goods could not have been returned because of the condition of war that existed between this country and the Empire of Austria-Hungary. It is not necessary that the goods should be physically returned to the seller if he accepts a tender and exercises dominion over and directs the disposition of them.

The learned trial justice also states that the letter of the counsel, Mr. Werner, under date of May 23, 1916, negatives the conclusion that the rescission had been accepted by Alexander & Co. In making this statement he overlooks the fact that the letter of January 25, 1916, of Alexander & Co. was not received until August, 1916, and, therefore, at the time the letter was written by Mr. Werner these goods were being held subject to the order of the seller and the return of them had not been accepted. The learned counsel for the respondent in his brief argues that the debiting the account of Alexander & Co. with the value of these goods shows that the corporation had paid for them prior thereto, but this argument is unsound. It is shown that there was a credit balance in Alexander & Co.'s account which included the value of these goods, together with the freight and other charges, and the entering of the same as a debit against Alexander & Co. was a necessary bookkeeping entry. These goods were never paid for by the defendant corporation, for the reason that only the balance of the account was paid by the draft of March 9, 1915.

The interlocutory judgment should be reversed, with costs, and judgment entered for the defendant dismissing the complaint, with costs.

CLARKE, P. J., DOWLING, MERRELL and PHILBIN, JJ., concurred.

Interlocutory judgment reversed, with costs, and judgment directed to be entered for the defendant dismissing the complaint, with costs. Order to be settled on notice.